UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN D. CRICHLOW,
Plaintiff

-vs-

DEPUTY K. CROWLEY, et al.,
Defendants

DECISION AND ORDER

13-CV-6624 CJS

---

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act and the Rehabilitation Act, in which Kevin Crichlow ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), proceeding *pro se*, alleges that staff at Wende Correctional Facility ("Wende") violated his federal constitutional and statutory rights in various ways. Now before the Court is Defendants' motion for summary judgment (Docket No. [#9]). The application is granted.

BACKGROUND

On November 20, 2013, Plaintiff commenced this action. The Complaint (Docket No. [#1] is a rambling, non-chronological, frequently-repetitive, sixty-six page document, asserting a litany of claims going back several years.[1] However, after carefully reviewing Plaintiff's Complaint and other submissions multiple times, it appears clear that he is asserting the following claims:

[1] The Complaint is apparently similar to a different complaint that Plaintiff filed in the Southern District, about which the Judge observed: "It is difficult to determine what Plaintiff's claims or allegations are, as the Amended Complaint reads like a stream of consciousness the length of a short novel, covering approximately four years' worth of events of all sorts and citing long strings of statutes and cases[.]" *Crichlow v. Fischer*, No. 12–cv–7774 (NSR), 2015 WL 678725 at *1 (S.D.N.Y. Feb. 17, 2015).

*Assaults by Staff and Failure to Protect from Inmate Assaults*

Plaintiff claims that on August 7, 2013, he was assaulted by an inmate named Coleman ("Coleman"), and that a few minutes later, Corrections Sergeant Parkin ("Parkin"), or perhaps "Parker," Corrections Officer Scherer ("Scherer") and Corrections Officer Alvarado ("Alvarado") also assaulted him, while expressing their approval of Coleman's attack. In that regard, Plaintiff alleges that Wende staff employed Coleman as an "enforcer" to retaliate against inmates. Plaintiff further contends that after the assault, Nurse Sedar ("Sedar") failed to properly treat or document his injuries. Subsequently, on or about September 23, 2013, Coleman attacked Plaintiff again, and Corrections Officer Rome ("Rome"), ran away from the fight, rather than intervening.

*Inadequate Medical Care*

Plaintiff claims to suffer from an infectious disease, and maintains that he is being denied a required supplemental diet. Plaintiff also contends that he was denied pain medication and appropriate treatment for a hernia, an injury to his right hand/wrist/arm, and an injury to his jaw.

*Retaliation*

Plaintiff contends that he has repeatedly experienced retaliation for writing inmate grievances, and that such retaliation includes the aforementioned assaults, the issuance of false misbehavior reports, the confiscation of his property and the refusal to treat his medical conditions.

*Conditions of Confinement*

Plaintiff contends that he should not have been placed at Wende. *See*, Complaint [#1] at p. 2 ("[I] was wrongfully tranfer[red] from Eastern [Correction Facility] to a high-risk facility for violent offenders, Wende."). Plaintiff also maintains that there is an unusually high incidence of violence at Wende that is part of a "Fight Club" promoted by Wende staff. Plaintiff further contends that living conditions at Wende are unconstitutional due to overcrowding, lack of recreation,[2] lack of reading lights, lack of personal care items such as toothpaste

[2]Plaintiff claims that on numerous instances in 2012 and 2013, Corrections Sergeant Johnson ("Johnson") denied him the opportunity to exercise.

and soap, lack of legal supplies, lack of laundry service, exposure to asbestos[3] and insect infestation.

*Accommodations for a Disability*
Plaintiff contends that he has a hearing disability, and that he is being denied items including a special alarm clock, telephone amplifier and headphones.

*Equal Protection*
Plaintiff claims to be asserting a "class of one" equal protection claim, based on retaliation against him for filing grievances. *See*, Docket No. [#16] at p. 13 (Indicating that Defendant treated him differently, without a rational basis: "Defendants retaliated against Plaintiff for pursuing various administrative and legal claims against Defendants."). However, the purported equal protection claims seems to be duplicative of his First Amendment retaliation claim.

On June 11, 2014, Defendants filed the subject pre-answer Motion for Summary Judgment [#9], including the required *Irby* notice. Defendants maintain that Plaintiff failed to exhaust his administrative remedies as to "nearly all" of his claims prior to commencing this action, in violation of 42 U.S.C. § 1997e(a). In that regard, Defendants maintain that prior to commencing this action, Plaintiff exhausted only one pertinent administrative grievance, which concerned an incident in which Defendant Nurse Cook ("Cook") allegedly handed Plaintiff a can of nutritional supplement while she was not wearing surgical gloves, and after she had coughed into her hand. Defendant allegedly told Cook that she needed to wear gloves, but Cook responded by calling Plaintiff the "N word" and issuing him a "false" misbehavior report. However, while Defendants admit that Plaintiff exhausted that claim administratively, they deny that Cook's alleged conduct amounts to an actionable claim. Defendants state that

---

[3]Plaintiff previously sue DOCCS over an alleged exposure to asbestos at Rikers Island. *See, Bush, et al. v. Horn*, No. 07 Civ. 3231(RJS)(FM), 2010 WL 1712024 (S.D.N.Y. Mar. 2, 2010).

Plaintiff also exhausted a grievance concerning alleged assault by staff,[4] but not until after he filed this action. Defendants further maintain that any claims against them in their official capacities are barred.

In response to Defendants' motion, Plaintiff submitted two documents [#15][#16] which are largely unresponsive to the motion, in that they focus on the merits of the underlying claims, rather than on whether he exhausted his administrative remedies. Plaintiff also spends pages discussing other issues not raised by Defendants in their motion, such as standing, and 42 U.S.C. § 1997e(e)'s limitation on damages.[5]

Interspersed among his discussion of the merits, however, Plaintiff includes a few sentences pertaining to the exhaustion of remedies.[6] For example, Plaintiff maintains that one of his grievances was "granted," and is therefore deemed exhausted. *See*, Docket No. [#15], attached memo of law at p. 10 ("[T]he Second Circuit Court of Appeal has held that an inmate need not appeal a favorable grievance decision in order to exhaust administrative remedies.") (*citing Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). Specifically, Plaintiff contends that after he filed a grievance concerning alleged assaults and failure to intervene by staff (Grievance Non. WDE 38314-13), the DOCCS Inspector General ("IG") "took over" the investigation. *See*, Docket No. [#16] at p. 5.

---

[4]Grievance WDE-38314-13 indicates that Plaintiff was assaulted by staff on August 7, 2013. As part of the investigation of the grievance, Plaintiff indicated that he was assaulted by Corrections Officer Alvarado, Corrections Officer Barrett, Corrections Officer Schultz, and Corrections Sergeant Parkin. Docket No. [#9-5] at p. 57. Plaintiff further indicated that Nurse Sedar failed to properly document his injuries. Plaintiff commenced this action on November 20, 2013, and the grievance was not exhausted until February 26, 2014.

[5]*See*, Docket No. [#15], "Response" Memorandum of Law at pp. 14-15, 16-17.

[6]*See, e.g.*, Docket No. [#15], "Response" Memorandum of Law at pp. 9-10, wherein Plainiff focuses on exhaustion for a few sentences, but then drifts back into a discussion of the merits of his claims. In all, Plaintiff's response[#15][#16] to Defendants' motion consists of one-hundred thirty-two pages, of which there are perhaps 3-4 pages dealing with administrative remedies.

Plaintiff contends that such grievance should be considered to have been resolved in his favor and/or exhausted, since the IG investigated his claim.

Plaintiff also contends that he exhausted a grievance concerning his conditions of confinement claim, and specifically, the lack of supplies to clean his cell, which was granted. *See*, Docket No. [#16], Ex. C (Grievance No. WDE 39555-14). However, that grievance was not filed until after this action was commenced. Plaintiff also seems to indicate that he exhausted his claims by appealing from adverse determinations at disciplinary hearings.

Additionally, Plaintiff contends that the staff at Wende interfered with his ability to exhaust his administrative claims by retaliating against him for filing grievances. *See*, Docket No. [#16] at p. 11 ("I, Plaintiff [have been] threat[ened] by staff and assault[ed] by staff and inmate[s] enforcing for staff at Wende C.F. for filing a lot of grievances."); *see also* Docket No. [#15] at p. 3 (referring to "mishandling of various inmate grievances"); *id*. at 5 ("They send back paper from grievances say I drop my complaint. Then I would have [to] write the whole thing up again. This is one of the reasons why I had to write so much"); *id*. at 6 (indicating that he was assaulted "by a inmate that work[s] in Grievances as a [e]nfo[r]cer for Wende."); *id*., attached Rule 56 stmt. at p. 4 ("Plaintiff claims that Defendant Haygood and other senior staff[ ] [members] interfered with Plaintiff's filing of inmate grievances by losing or ignoring numerous, but unspecified grievances Plaintiff filed.").

The Court notes, however, that Plaintiff's reference to staff "losing" or destroying his grievances appears to refer to incidents in which his personal legal papers were lost long after he filed his grievances. For example, Plaintiff contends that on September 13, 2011, a civil complaint, with attachments including "over 200 grievances," that he was

attempting to send to the Southern District of New York in connection with a lawsuit went missing, and was not received by the Court. *See*, Docket No. [#15], "Declaration Under Penalty of Perjury of Kevin Crichlow" at ¶ 3. Similarly, Plaintiff contends that on one occasion, Defendant Corrections Officer Haygood was supposed to make a photocopy of a civil complaint for him, but she went on vacation and either lost or destroyed the documents.[7] The loss of such documents, though, is not pertinent to the issue of exhaustion of administrative remedies, and Defendants' counsel has provided Plaintiff with copies of all of his lost grievances.

With regard to Defendants' application for summary judgment on the merits of the claim against Cook, Plaintiff responds only as follows: 1) he states that Cook "has a history of racial slurs, false misbehavior reports[,] harassment and denial of medical care";[8] 2) he states that Cook "denied equal protection of the law";[9] 3) he states that Cook "discriminat[ed] against me at medication on 10.26.12 . . . she call[ed] me a "nigger" [be]cause I asked[ed] her to put on gloves [be]cause she as coughing and covering her mouth with her hand";[10] and 4) he states that "Nurse Cook made up misbehavior report to cover up her misconduct."[11]

The Court granted Defendants an opportunity to file a reply, *see*, Order [#14], but

---

[7]*See*, Docket No. [#15], Rule 56 Stmt., at p. 4; see also, Complaint [#1] at ¶ ¶ 4, 52 and attached affidavit of inmate Tim Jones (Indicating that on August 24, 2013, C.O. Arlethia Haygood took Plaintiff's § 1983 complaint to make copies for him, went on vacation, failed to return the documents, apologized to Plaintiff for losing his documents, but later denied losing the documents and attempted to cover up the loss.); *accord*, Docket No. [#16] at p. 6. Plaintiff also vaguely alleges that "prison staff" "lost or ignored" other grievances. *See*, Docket No. 16] at p. 4.

[8]Docket No. [#16] at p. 3.

[9]*Id*. at p. 12.

[10]Docket No. [#15] at p. 4.

[11]Docket No. [#15], attached Rule 56 stmnt. at p. 3.

they declined to do so.

DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

The Court is mindful that this case is still in its early stages, and that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Young v. Benjamin Development Inc.*, 395 Fed.Appx. 721, 722–723, 2010 WL 3860498 at *1 (2d Cir. Oct.5, 2010) (citation omitted). Here, however, Defendants have already provided Plaintiff with discovery concerning the issue that is before the Court, which is exhaustion of administrative remedies. In that regard, on August 18, 2014, Defendants' counsel served Plaintiff with approximately 200 pages of documents, consisting of all inmate grievances that Plaintiff filed at Wende between November 2010 and November 2013.

*Official Capacity Claims*

Under the Eleventh Amendment, State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir.2009) (noting that "*Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," though such immunity may be waived or abrogated in a particular case). The instant Complaint demands money damages as well as injunctive and declaratory relief. To the extent Plaintiff is seeking money damages against Defendants in their official capacities, such claims are dismissed.

*Exhaustion of Administrative Remedies*

Defendants contend that Plaintiff failed to exhaust his administrative remedies before commencing this action, and that his claims must therefore be dismissed. The relevant legal principles are clear:

> The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures.
> 
> ***
> 
> The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.
> 
> ***

> The IGP has a regular three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7.

*Espinal v. Goord*, 558 F.3d 119, 123-125 (2d Cir. 2009) (citations and internal quotation marks omitted). As the exhaustion statute indicates, it applies to § 1983 claims and claims "under any other Federal law," including the ADA and § 504. *See, e.g., Arce v. O'Connell*, 427 F.Supp.2d 435, 440 (S.D.N.Y. 2006) ("It is undisputed that claims under the ADA must be exhausted via the grievance procedure established under the PLRA."); *see also, Alster v. Goord*, 745 F.Supp.2d 317, 332 (S.D.N.Y. 2010) (agreeing that inmates' ADA claims must be exhausted).

However, an inmate's duty to exhaust administrative remedies under § 1997e(a) may be excused in certain cases:

> Though exhaustion is generally mandatory, we have explained that a failure to exhaust administrative remedies may be excused where: (1) the administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) "special circumstances ... justify the prisoner's failure to comply with administrative procedural requirements." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004) (internal quotation marks omitted).

*Dabney v. Pegano*, — Fed.Appx. — , 2015 WL 664562 at *1 (2d Cir. Feb. 17, 2015).

In the instant case, Plaintiff does not claim that administrative remedies were unavailable to him. To the contrary, he repeatedly states that he filed "over 300 grievances." Docket No. [#16] at p. 1; *see also*, Docket No. [#15] at p. 2 ("Since 2008-

2014 Plaintiff filed over 300 grievance[s].”). This means that during the seven-year period between 2008 to 2014 which Plaintiff discusses in his papers, he filed one inmate grievance every 8.5 days, or essentially one grievance every week. Plaintiff has not come forward with evidence that he fully exhausted those grievances, however.

Instead, Plaintiff offers various reasons why the Court should excuse his failure to follow the usual steps for exhausting inmate grievances. For example, he suggests that one of his grievances became exhausted when the Inspector General investigated his claim. However, contrary to Plaintiff’s contention, the fact that the Inspector General investigates an inmate’s claim does not excuse the inmate from exhausting his grievance using New York’s usual 3-tiered grievance system. *See, Dabney v. Pegano*, 2015 WL 664562 at *3 (“The IG's investigation of Plaintiff's claims does not constitute such a special circumstance [excusing exhaustion].”).

Nor has Plaintiff shown that he exhausted his administrative remedies by appealing from adverse rulings at disciplinary hearings. In that regard, Plaintiff, who has spent many years in DOCCS custody, has neither claimed nor shown that he reasonably believed that appealing from his disciplinary convictions was a proper substitute for using the inmate grievance program. *See, Dabney v. Pegano*, 2015 WL 664562 at *3 (“Appealing from a disciplinary hearing, however, only justifies non-compliance with the grievance procedures when a prisoner “reasonably interpret[s] [DOCCS] regulations to mean that his only administrative recourse was to appeal his disciplinary conviction.” *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir.2004). Plaintiff is no stranger to the IGP and does not claim that he believed the disciplinary appeal substituted for IGP compliance.”).

Consequently, Plaintiff has not raised a triable issue of fact as to whether the Inmate Grievance Program was unavailable to him, or as to whether there were special

circumstances justifying his failure to follow the usual procedures for exhausting grievances.

Additionally, Plaintiff has failed to comply with § 1997e(a) by exhausting a grievance *after* he filed this action. *See, Burgos v. Craig*, 307 Fed.Appx. 469, 470, 2008 WL 5210890 at *1 (2d Cir. Dec. 15, 2008) ("[C]ompleting the exhaustion requirements only after filing suit is insufficient.") (citation omitted).

Plaintiff, though, also appears to argue that Defendants should be estopped from raising the affirmative defense of failure to exhaust. In that regard, construing Plaintiff's papers very liberally, he maintains that he generally faced retaliation whenever he filed a grievance. Assuming that Plaintiff is attempting to assert estoppel, the legal principles are clear:

> A prisoner may invoke the doctrine of estoppel when "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Ruggiero [v. County of Orange]*, 467 F.3d [170,] 178 [(2d Cir. 2006)]. Prior cases have held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action. *See, e.g., Hemphill [v. New York,]* 380 F.3d [680,] 688 [(2d Cir. 2004)]; *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir.2004).

*Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011).

However, such estoppel only applies to a particular defendant if that defendant did something to prevent a plaintiff from exhausting administrative remedies. *See, Hemphill v. New York*, 380 F.3d at 689 ("[D]epending on the facts pertaining to each defendant, it is possible that some individual defendants may be estopped, while others may not be."); *see also, Mena v. City of New York*, No. 12 Civ. 0028(CM), 2014 WL 2968513 at *7 (S.D.N.Y. Jun. 27, 2014) ("The Second Circuit has indicated that the

theory of equitable estoppel only estops a particular defendant from asserting the affirmative defense of non-exhaustion if the defendant's own actions inhibited the inmate from exhausting.”).

On the other hand, an inmate-plaintiff’s general fear of retaliation cannot estop defendants from raising the failure-to-exhaust affirmative defense. *Ceparano v. County of Suffolk*, No. 10–CV–2030 (SJF)(AKT), 2013 WL 6576817 at *4, 6 (E.D.N.Y. Dec. 13, 2013) (Inmate not excused from exhausting remedies where he did not indicate that any defendant prevented him from exhausting his remedies, but stated only that he “knew that filing a Grievance would result in further harm to his health and further destruction of his property.”) (collecting cases); *see also, Singh v. Lynch*, 460 Fed.Appx. 45, 48, 2012 WL 386416 at *2 (2d Cir. Feb. 8, 2012) (“Singh's subjective fear of retaliation was insufficient to support estoppel. Estoppel of a non-exhaustion defense requires some evidence of threats or other conduct by Lynch that could reasonably be understood as intended to inhibit Singh from pursuing administrative remedies for the alleged assault.”).

In the instant case, Plaintiff does not claim that the aforementioned perceived culture of retaliation at Wende actually prevented him from filing any particular grievance relating to a particular claim in this action. Nor does Plaintiff contend that any particular defendant in this action prevented him from exhausting his administrative remedies. Rather, he merely refers to unnamed “staff” retaliating against him for filing grievances.[12] As for identifying any particular defendant, at most Plaintiff contends that Defendant Haygood “lost” some of his documents, including grievance exhibits, after she took them to make photocopies for Plaintiff. However, as already discussed,

---

[12] *See, e.g.*, Docket No. [#16] at p. 11 (“I, Plaintiff been threatin by staff’s and assaults by staff’s and inmate inforceing for staffs at Wende C.F. for filing a lot of grievances against Wende C.F.”)

Haygood allegedly lost Plaintiff's copies of already-filed grievances; she did not prevent Plaintiff from filing grievances.

Based upon all of the foregoing, the Court finds that Plaintiff has failed to raise a triable issue of fact as to whether he exhausted his administrative remedies as to any claim except his claim against Nurse Cook, which Defendants admit was exhausted prior to the commencement of this action.

*Claim Against Nurse Cook*

Plaintiff contends that after he told Nurse Cook to put on gloves, she called him "the N word" and issued him a false misbehavior report. Even assuming *arguendo* that Cook referred to Plaintiff with a racial slur, or that she issued Plaintiff a false misbehavior report, such actions by themselves are not constitutional violations. *See, Williamsv. Dubray*, 557 Fed.Appx. 84, 86-87 (2d Cir. Feb. 26, 2014) (Indicating that "verbal harassment, without more, is not actionable under § 1983," and that "it is well settled that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.") (citations omitted). Of course, the issuance of a false misbehavior report in retaliation for protected activity is actionable, but Plaintiff has not pleaded a retaliation claim against Cook. In that regard, although Plaintiff contends that Cook filed a false misbehavior report against him after he spoke to her, he does not specifically allege that she did so in order to retaliate against him. And, in any event, Plaintiff did not engage in "protected activity" when he told Cook that she needed to put on surgical gloves.[13] *See, Lashley v. Wakefield*, 367 F.Supp.2d 461 (W.D.N.Y. 2005) (Inmate did

[13]Plaintiff alleges that Cook became "upset and red in the face" after he told her that she had to put on gloves: "I told Nurse Cook that under S.N.Y. Law & S.N.Y. DOCS & Department of Health, she had to wear gloves." Complaint [#1] at ¶ 39.

not engage in protected activity when he told correctional facility employee "how to do his job."). Lastly, to the extent that Plaintiff contends Cook violated his Eighth Amendment rights by denying him a nutritional supplement on one occasion following their argument, such deprivation does not rise to the level of constitutional violation. Accordingly, Cook is entitled to summary judgment.

CONCLUSION

Defendants' motion for summary judgment [#9] is granted. The official capacity claims are dismissed, as is the claim against Cook, with prejudice. The Clerk of the Court is directed to terminate Cook as a defendant. The remaining claims are dismissed without prejudice, for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:   Rochester, New York
         April 20, 2015

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge